FILED

FEB 2 1 2014

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| SHANA SCHMIDT, | * | CIV 13-3013-RAL |
| | * | |
| Petitioner, | * | |
| | * | OPINION AND ORDER |
| vs. | * | DENYING MOTION UNDER |
| | * | 28 U.S.C. § 2255 |
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Respondent. | * | |

Following a trial on July 7, 8, and 9, 2010, a jury returned a verdict finding Shana Schmidt guilty of assault with a dangerous weapon and assault resulting in serious bodily injury. CR 09-30079-RAL, Doc. 74.[1] This Court sentenced Schmidt to fifty-one months in prison on each count, with the sentences to run concurrently. CR Doc. 123; CR Doc. 124. This Court also ordered Schmidt to pay restitution of $64,088.06 to the South Dakota Medicaid Office of Recovery and $193.50 to the South Dakota Crime Victims' Compensation Program because these entities had covered medical costs and expenses incurred by Brittany Shaw, the victim of Schmidt's assault. CR Doc. 124. Schmidt filed a Notice of Appeal to the United States Court of Appeals for the Eighth Circuit, which affirmed the restitution award. United States v. Schmidt, 675 F.3d 1164, 1166 (8th Cir. 2012).

Schmidt now has filed a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 in this case. CIV Doc. 1; CIV Doc. 4. Schmidt contends that her court-appointed counsel did not provide effective assistance of counsel allegedly by not introducing medical information about the defendant, not presenting information on alleged witness tampering or

[1] Citations to pleadings from Schmidt's criminal case will be "CR Doc." followed by the document number from the Case Management/Electronic Case Filing (CM/ECF) system. Citations to pleadings from the present case, CIV 13-3013-RAL, in which this Opinion and Order is being entered will be "CIV Doc." followed by the CM/ECF document number.

false or perjured testimony, misleading or misinforming the defendant, and failing to appropriately argue against restitution. CIV Doc. 4. This Court screened the case and ordered the Government to file a response. CIV Doc. 5. The Government resisted the motion and sought an order regarding attorney-client privilege waiver, which this Court granted. CIV Doc. 9. Schmidt opted to sign the attorney-client privilege waiver form. CIV Doc. 10. Her trial counsel Jana M. Miner, the senior litigator for the Federal Public Defender's Office for North and South Dakota, filed an affidavit providing the Court with additional information. CIV Doc. 11. The Government then answered resisting Schmidt's § 2255 motion and filed its own motion to dismiss. CIV Doc. 15; CIV Doc. 16.

After Schmidt failed to file a reply within her time to do so, this Court entered an Order Directing Petitioner to Reply. CIV Doc. 17. This Court then entered a second Order Directing Petitioner to Reply, after it appeared that Petitioner had not received the first order. CIV Doc. 19. Schmidt then submitted a letter requesting an additional 30 days within which to reply. CIV Doc. 20. This Court granted Schmidt's letter request and enlarged the time for her to reply to January 6, 2014. CIV Doc. 21. Even so, Schmidt still did not file a reply. For the reasons explained herein, this Court denies Schmidt's § 2255 motion.

## I.    Facts from the underlying criminal case

Shana Schmidt was indicted on one count of assault with a dangerous weapon and one count of assault resulting in serious bodily injury. CR Doc. 1. The Indictment alleged that, on or about July 11, 2009, in Todd County, in Indian country, in the District of South Dakota, Shana Schmidt, an Indian, unlawfully assaulted Brittany Shaw with a dangerous weapon and caused serious bodily injury in violation of 18 U.S.C. § 113(a)(3) and (6) and 18 U.S.C. § 1153. Schmidt was appointed Miner as her attorney. Schmidt pleaded not guilty and the case went to trial in July of 2010.

Schmidt's assault of Shaw occurred during the early morning hours of July 11, 2009, in South Antelope where Schmidt had been hanging out with her friend Melanie Old Lodge. There was no question that Schmidt is an "Indian" for purposes of federal criminal jurisdiction and that the community of South Antelope is in Indian country, being on the Rosebud Indian Reservation in South Dakota. Schmidt and Old Lodge had been drinking alcohol in the hours leading up to the assault.

Shaw likewise had been drinking in the hours before the assault with a group of fellow young women, including Sonny Prue, Shakira Rattling Leaf, Vanessa Black Bear, and Angeline Andrews. Shaw drove her group to the South Antelope community in the early morning hours of July 11, 2009, to a location near to where Schmidt and Old Lodge were drinking. Prue, who is Shaw's cousin, got out of the vehicle and talked with her aunt outside a home where others were gathered. Prue supplied her aunt with a beer. Prue got back into the front passenger seat of Shaw's car, and Shaw planned to drive away. At that point, Schmidt's friend Melanie Old Lodge threw a beer bottle at the car. Prue and Shaw got out of the car and confronted Old Lodge. Prue and Old Lodge shoved each other and a fight ensued. During this first fight, Prue and Old Lodge were scuffling, and Old Lodge's brother pushed Prue away and broke up the fight. As this initial scuffle was occurring, Schmidt grabbed Shaw by the hair and hit her, and Shaw appeared to be fighting back against Schmidt. This initial confrontation between Schmidt and Shaw then broke apart.

After Shaw and Schmidt were separated, Schmidt went to a nearby vehicle. She reached into the vehicle and came back toward Shaw with her hand lowered and something in her hand. Schmidt then attacked Shaw. Shaw immediately went down and began bleeding profusely from her neck. No witness saw exactly what Schmidt had in her hand when she struck Shaw. However, multiple witnesses—Sonny Prue, Angeline Andrews, Julie Sitting Bear, who was in

a vehicle behind Shaw's car, Shakira Rattling Leaf, and Vanessa Black Bear—all saw Schmidt strike Shaw and Shaw thereafter bleeding from her neck. Prue saw Schmidt jumping around and yelling profanities after striking Shaw and further saw something shiny in Schmidt's hand.

Shaw suffered a life-threatening injury. Shaw was transported to Avera McKennan Hospital in Sioux Falls, where she arrived intubated and on a respirator. Shaw was given six units of blood, as she sustained extensive blood loss and had very low blood pressure. The general surgeon who performed the initial surgery on Shaw found a penetrating injury to the right side of her neck that was three centimeters in width and six inches in depth. Shaw's jugular vein had been wounded and she had an injury to her innominate artery. Shaw underwent three surgeries during the course of her twenty-one-day hospitalization in recovering from the injury.

Schmidt presented a defense case consisting of a number of witnesses who had been present in the area and did not see what had happened. Among other witnesses, Schmidt called Melanie Old Lodge who testified that she was very intoxicated and got "ganged." Schmidt also called Dusty Old Lodge who testified that he intervened to protect his sister Melanie when Prue and Shaw were attacking her. Neither of those two, like other defense witnesses, saw what happened between Schmidt and Shaw in the second confrontation nor knew how Shaw got hurt. That is, only the prosecution witnesses testified about what occurred between Schmidt and Shaw and how Shaw got stabbed.

Schmidt took the stand and testified that she remembered Prue bringing her aunt beer and thereby confirmed her presence at the scene. Schmidt recalled Melanie Old Lodge getting into a fight with Prue, Shaw, and Shakira Rattling Leaf. According to Schmidt's testimony, despite Old Lodge being her friend, Schmidt just stood there. According to Schmidt, Prue and Shaw then confronted Schmidt and beat her up even though Schmidt had done nothing. Schmidt denied attacking Shaw and denied stabbing Shaw. Schmidt said she left the scene of the fight

because she herself was injured. There was no testimony, however, from any witness that anyone fought with Shaw that night other than Schmidt.

Schmidt was found guilty by the jury of both assault with a dangerous weapon and assault resulting in serious bodily injury. Schmidt filed a motion for a new trial, which this Court denied. CR Doc. 92; United States v. Schmidt, 742 F. Supp. 2d 1071 (D.S.D. 2010).

## II. Discussion

### A. Evidentiary Hearing

An evidentiary hearing is not needed to address Schmidt's contentions. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [she] is entitled to no relief.'" Holder v. United States, 721 F.3d 979, 993 (8th Cir. 2013) (quoting Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008)). Further, "[n]o hearing is required where the claim 'is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.'" Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) (quoting Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994)). Because the record convincingly refutes Schmidt's assertions and shows conclusively that she is not entitled to relief, an evidentiary hearing is not necessary. See United States v. Big Eagle, No. CIV 13-3015-RAL, 2014 WL 234735, *8 (D.S.D. Jan. 22, 2014).

### B. Schmidt's Claims

Under Strickland v. Washington, 466 U.S. 668 (1984), Schmidt must meet a two-prong test in order to prevail on a claim of ineffective assistance of counsel. Under the first prong, Schmidt must demonstrate "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. To make such a showing, Schmidt must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). "Judicial scrutiny of counsel's performance must be highly deferential." Id. "When reviewing counsel's performance, a court must avoid using the 'distorting effects of hindsight' and must evaluate the reasonableness of counsel's conduct 'from counsel's perspective at the time.'" United States v. Carter, 629 F. Supp. 2d 934, 940 (D.S.D. 2009) (quoting Strickland, 466 U.S. at 689).

Under the second prong of Strickland, Schmidt must demonstrate prejudice, by showing a reasonable probability that counsel's error altered the result of the proceeding. Strickland, 466 U.S. at 694. "To establish prejudice, [Schmidt] must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Wong v. Belmontes, 558 U.S. 15, 19-20 (2009) (per curiam) (quoting Strickland, 466 U.S. at 694). Where, as here, a defendant makes multiple claims of ineffective assistance of counsel, each claim must be independently examined to determine if there is prejudice, rather than taking the matters collectively. See Hall v. Luebbers, 296 F.3d 685, 692-93 (8th Cir. 2002). That is, the Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief." United States v. Brown, 528 F.3d 1030, 1034 (8th Cir. 2008). Thus, Schmidt faces what the Supreme Court has characterized a "highly demanding" standard under Strickland. Kimmelman v. Morrison, 477 U.S. 365, 382 (1986). Schmidt has not met that standard.

Schmidt raises four separate arguments for alleged ineffective assistance of counsel. First, she alleges that her trial attorney Jana Miner failed to introduce medical records concerning Schmidt. Schmidt provides no elaboration on what medical records she is referring to, but simply makes a conclusory assertion. The Eighth Circuit has held that allegations of ineffective assistance of counsel may be summarily denied when the allegations are merely conclusory. Richardson v. United States, 577 F.2d 447, 452 (8th Cir. 1978); see also Bryson v. United States,

268 F.3d 560, 562 (8th Cir. 2001) (conclusory allegations are insufficient to establish ineffective assistance); Hollis v. United States, 796 F.2d 1043, 1046 (8th Cir. 1986) (vague and conclusory allegations are insufficient to state a ground for relief under § 2255).

At trial, Miner introduced evidence through the testimony of Schmidt's mother about abrasions that Schmidt had after July 11, 2009, including some photographs of the abrasions. The abrasions do not approach the nature of the injury to Shaw, of course, and there was no evidence that Schmidt sought out medical attention for the abrasions. Miner's affidavit makes clear that she reviewed numerous documents and trial-related materials. Miner's affidavit suggests that she interprets Schmidt's claim as relating to possible questions concerning Schmidt's "personality, physical and mental condition, competency, and state of mind." CIV Doc. 11. Miner observed each of these and came to the conclusion that she saw no physical impairment or other impairment in Schmidt that would have prevented her from committing the offense. CIV Doc. 11. The record contains no information about any medical information concerning Schmidt that was relevant to the case and not presented.

Schmidt's second ineffective assistance of counsel claim contends that Miner did not present proof of witness tampering, false or perjured testimony. Schmidt's claim is conclusory, in failing to allege what witness supposedly testified falsely or was tampered with. Again, such conclusory claims of ineffective assistance of counsel may be summarily denied. Richardson, 577 F.2d at 452; see also Bryson, 268 F.3d at 562; Hollis,796 F.2d at 1046.

Miner's affidavit indicates that she did a thorough investigation and found no reason to believe witnesses the prosecution called would or did perjure themselves during trial. CIV Doc. 11. Miner became aware of a post-trial allegation that a witness had made statements contrary to trial testimony, but an investigation into that found the contention to be baseless. Miner also found no evidence of any witness tampering. CIV Doc. 11. At trial, Miner cross-examined each

of the witnesses concerning the fact that the assault occurred when it was dark out, when the witnesses had been drinking, and when there was some commotion ongoing and possible confusion. Miner's handling of prosecution witnesses was not ineffective assistance of counsel.

The third ground raised by Schmidt for alleged ineffective assistance of counsel is that Miner allegedly misled and misinformed her, as Schmidt puts it, in an attempt to "negate [Schmidt] from case knowledge." CIV Doc. 4. Schmidt's § 2255 motion and submissions do not elaborate on what precisely she is claiming, again making a conclusory contention that this Court can summarily deny under Richardson, 577 F.2d at 452. See also Bryson, 268 F.3d at 562; Hollis,796 F.2d at 1046.

Miner's affidavit makes clear that she had many discussions and meetings with Schmidt, that the two of them discussed the case, and that Schmidt gave Miner inconsistent information. Schmidt initially told Miner that she had no memory of what happened during the incident, because she was too intoxicated and hit her head that night. CIV Doc. 11. Miner challenged Schmidt during trial preparation about what seemed to be a selective failure to recall. Miner wanted Schmidt to think hard about the case and assert self-defense and defense of others. Schmidt, however, did not follow Miner's advice to assert self-defense or defense of others and in fact testified at trial that she did not assault Shaw. Under the circumstances, Schmidt did not appear to be in any way misled or misinformed and indeed made the pivotal decision of what the defense would be and what she would say to the jury. Schmidt's testimony that she did not strike or stab Shaw was directly refuted by what Prue, Andrews, Sitting Bear, Rattling Leaf, and Black Bear all observed and testified to have occurred.

Schmidt's fourth and final argument for ineffective assistance of counsel contends that Miner was ineffective in contesting the restitution award. Although it is true that Schmidt at sentencing was ordered to pay restitution, that result stemmed from proper application of law

rather than from any ineffective assistance of counsel. Miner argued on behalf of Schmidt that the Court should decline to award restitution due to Schmidt's indigency and based on the Victim and Witness Protection Act of 1982. Schmidt, 675 F.3d at 1166. This Court, however, determined that the Mandatory Victims Restitution Act trumped the provisions of the Victim and Witness Protection Act because Schmidt's offense was a crime of violence under 18 United States Code § 3663A(c)(1) thereby making restitution mandatory. Id. at 1166. The Eighth Circuit affirmed. Id. at 1167-70. Schmidt has no basis to contend that ineffective assistance of counsel resulted in her obligation to pay restitution.

As set forth above, Schmidt must meet a two-prong test under Strickland, 466 U.S. 668, by demonstrating both that Miner committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" Id. at 687, and that there is a reasonable probability that counsel's error altered the result of the proceeding, Id. at 694. Schmidt has met neither prong of the Strickland standard. Even if somehow Miner provided ineffective assistance of counsel through any of the grounds that Schmidt contended, Schmidt cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. After all, it was clear that Brittany Shaw suffered serious bodily injury on July 11, 2009, in South Antelope as a result of a sharp instrument being thrust some six inches into the area of her neck and clavicle. There is no question that the injury occurred in South Antelope as a result of some assault. Multiple witnesses testified that there was just one person—Schmidt—who assaulted Shaw. Shaw collapsed and was bleeding from her neck after that assault. Miner presented witnesses that had been present and did not see the assault, but there was no witness who testified to anyone else fighting with Shaw that night besides Schmidt. That left Schmidt alone, testifying contrary to multiple other witnesses, that she, though present and in a scuffle allegedly with Prue and Shaw,

did not strike Shaw and did not stab Shaw. The jury did not believe Schmidt. The fact that Schmidt was convicted of the two offenses resulted not from ineffective assistance of counsel, but rather from the facts of the case.

## III. Conclusion

For the reasons contained herein, it is hereby

ORDERED that Schmidt's motion to vacate, set aside, or correct sentence by a person in federal custody, Doc. 4, is denied. It is further

ORDERED that the Government's Motion to Dismiss Motion under 28 U.S.C. § 2255, Doc. 16, is granted. It is finally

ORDERED, ADJUDGED AND DECREED that judgment of dismissal in favor of the Government and against Schmidt under Rules 54 and 58 of the Federal Rules of Civil Procedure hereby enters.

Dated February 21st, 2014.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE